**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

BRENTON RODEHEAVER,

*Plaintiff,*

v.

HOMEPRO REMODELERS LLC and ROBERTO DIBENEDETTO, individually and jointly,

*Defendants.*

Civil Action No. 2:22-cv-1887

Hon. William S. Stickman IV

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Brenton Rodeheaver ("Rodeheaver") filed an Amended Complaint and Demand for Jury Trial against Defendants HomePro Remodelers LLC ("HomePro") and Robert DiBenedetto ("DiBenedetto") (collectively, "Defendants"). (ECF No. 22). At Count I, Rodeheaver claims that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, by failing to pay him a statutorily mandated minimum wage during his final pay period as a HomePro employee, as well as the minimum wage for performance of various job-related duties that he claims are compensable. At Count II, Rodeheaver brings a similar claim, alleging that Defendants violated Pennsylvania's Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.*, by failing to pay him pursuant to hours worked in performance of various job-related duties that he claims are compensable. At Count III, Rodeheaver claims that Defendants violated Pennsylvania's Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq.*, by failing to pay wages due to him pursuant to the same duties averred in Counts I and II. At Count IV,

Rodeheaver brings a breach of contract claim, alleging that Defendants failed to provide the working hours and wages they had promised Rodeheaver. At Count V, Rodeheaver brings a claim for unjust enrichment, alleging that Defendants retained the benefit of Plaintiff's labor without compensating him for the same. Presently before the Court is Defendants' Second Motion to Dismiss Rodeheaver's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 23). For the reasons set forth below, the motion will be denied.

## I.   FACTUAL BACKGROUND

Rodeheaver was employed by Defendants for approximately three months between May 2022 and August 2022. (ECF No. 22, ¶¶ 9-10). While employed by Defendants, Plaintiff's job title was "Laborer," whereby he was responsible for reporting to job sites and performing duties related to construction and remodeling home installations. (*Id.* ¶ 11). Plaintiff was classified as a non-exempt employee under the FLSA and the PMWA. (*Id.*)[1] Rodeheaver's hourly wage as Defendants' employee was $22.00, which Rodeheaver claims was to be paid weekly for 55 hours of work per week. (*Id.* ¶¶ 11-12). Additionally, on or about October 2022, DiBenedetto advanced Rodeheaver a loan of $400.00 for Rodeheaver's purchase of new tires for his personal vehicle (which he also used for work). (*Id.* ¶ 13).

---

[1] Under the FLSA, an employee is considered "exempt" from its minimum wage provisions if said employee works "in a bona fide executive, administrative, or professional capacity" as defined by agency regulations determined by the Secretary of Labor. *Helix Energy Solutions Group, Inc. v. Hewitt*, 598 U.S. 677, 682 (2023) (citing 29 U.S.C. § 213(a)(1)). *Inter alia*, an employee exempt from the FLSA is paid on a "salary basis" and carries out three listed responsibilities: "managing the enterprise", "directing other employees", and "exercising power to hire and fire[.]" *Id.* at 683 (citing 29 C.F.R. § 541.100(a)). Similarly, an employee is exempt from the PMWA's minimum wage provisions if employed in a "bona fide executive . . . capacity." *Itterly v. Family Dollar Stores, Inc.*, 606 Fed. App'x 643, 645 (3rd Cir. 2015) (citing 43 P.S. § 333.105(a)(5)). Here, the Court accepts that Rodeheaver was paid on an hourly basis and draws the reasonable inference that Rodeheaver did not work in an executive, administrative, or professional capacity as a Laborer.

Rodeheaver asserts that his sole supervisor would repeatedly leave work after just half of the pre-scheduled total work time for the day had passed. (*Id.* ¶ 14). Given that Rodeheaver was not authorized to work unsupervised, Rodeheaver alleges that his supervisor's conduct resulted in a significant diminution of his compensable working time—from 55 hours, a number asserted to have been previously agreed to by Rodeheaver and Defendants, to around but no more than 40 hours. (*Id.* ¶ 15).

Furthermore, Rodeheaver alleges multiple instances where he arrived at a job site and waited to commence work until his supervisor and/or a fellow employee arrived (as per Defendants' policy). (*Id.* ¶ 19). However, in such instances, Rodeheaver alleges that his supervisor and/or fellow employee never arrived, thus preventing him from undertaking that day's work. (*Id.*). On such days, Rodeheaver claims that he could only perform preparatory actions in anticipation of work, and that such actions (and his time spent waiting at job sites) constitute compensable working hours for which he has not received compensation. (*Id.*). Rodeheaver characterizes this as the "Work Preparation Time Deduction Practice". (*Id.*).

Additionally, Rodeheaver claims that DiBenedetto had promised that Rodeheaver would be compensated at an hourly rate of $22.00 for required travel to, from, and in between job sites, and that DiBenedetto had also promised to compensate Rodeheaver for work-related gasoline expenses. (*Id.* ¶¶ 17-18). However, Rodeheaver claims that he never received any such compensation (which Rodeheaver characterizes as the "Gasoline Non-Reimbursement Practice"). (*Id.* ¶ 18). Plaintiff further asserts that he would often travel to job sites that were located in a city different from where he resided or where HomePro was situated, and that were outside of the normal, typical, and standardized fifteen-to-thirty-minute commute for a HomePro Laborer. (*Id.* ¶ 21). Rodeheaver asserts that he would return to his personal residence at the end of the workday,

and that he was not compensated for such travel as work time (which Rodeheaver characterizes as the "Traveling Time Deduction Practice"). (*Id.*). Further, Rodeheaver claims that his final paycheck from Defendants was in the amount of zero dollars, which DiBenedetto allegedly justified as satisfaction for his loan. (*Id.* ¶ 23-24). Rodeheaver refers to this as the "Final Paycheck Time Deduction Practice". (*Id.* ¶ 25).

## II. Standard Of Review

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the

complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

Generally, a court may not consider an extraneous document when reviewing a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). If parties present matters outside the pleadings and the court does not exclude them, the motion must be converted to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). When reviewing the sufficiency of a complaint, however, a court may consider attachments to it without converting the motion into one for summary judgment if they are integral to the allegations in the complaint and are authentic. *See In re Burlington*, 114 F.3d at 1426 (holding that a court may consider a "document integral to or explicitly relied upon in the complaint"); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (same); *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017) (same); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

## III. ANALYSIS

### A. Counts I and II: Rodeheaver's Minimum Wage Claims Under the FLSA and PMWA

At Counts I and II, Rodeheaver alleges that Defendants failed to pay him at least $7.25 per hour for approximately 20 hours worked during his final pay period as a HomePro employee in violation of the FLSA and PMWA. (ECF No. 22, ¶ 26). Given that the PMWA's minimum wage

provision "substantially parallels" that of the FLSA, the Court will analyze Count I and Count II together.[2]

Under the FLSA and PMWA, employees are entitled to minimum compensation of at least $7.25 per hour worked. *See* 29 U.S.C. § 206(1)(C); 43 P.S. § 333.104(a)(1). In support of his allegation that Defendants failed to compensate him at the statutorily mandated rate, Rodeheaver has attached the final paystub he received from Defendants. (ECF No. 26-1, p. 2). Rodeheaver argues that this exhibit demonstrates Defendants' failure to pay him the gross wage of $352.67 that he had accrued during the July 2022 pay period, and that Defendants specifically "paid" Rodeheaver an amount of $0. (ECF No. 26, p. 4).

Rodeheaver has also provided a HomePro check dated July 1, 2022, in the amount of $0 ("Exhibit B"). (ECF No. 26-2). Defendants do not dispute that Exhibit B reflects Rodeheaver's compensation for work he performed during the July 2022 pay period. Instead, Defendants maintain that the amount paid by the check represents a deduction to satisfy the $400.00 loan Defendants advanced to Rodeheaver. (ECF No. 11, ¶ 1). Because Exhibit B is integral to Rodeheaver's minimum wage claims, and the Court will consider it at the motion to dismiss stage. *See In re Burlington*, 114 F.3d at 1426 (holding that a court may consider a "document integral to or explicitly relied upon in the complaint"). The Court finds that Exhibit B, in light of the

[2] As to hourly minimum wage provisions, the FLSA sets a "national floor" under which a state's minimum wage cannot drop. *In re Amazon*, 255 A.3d 191, 201 (Pa. 2021). Since 2009, the national minimum wage under the FLSA has been $7.25 per hour, and the PMWA requires Pennsylvania's minimum wage to at least equal that set by the FLSA. *See* 29 U.S.C. § 206(1)(C); 43 P.S. § 333.104(a)(1). Given that Pennsylvania has not raised its hourly minimum wage above the $7.25 per hour mandated by the FLSA, a joint analysis of both statutes' hourly minimum wage provisions is appropriate here. *Levitt v. Tech. Educ. Servs., Inc.*, No. 10-CV-6823, 2012 WL 3205490 at *3 (E.D. Pa. Aug. 7, 2012) ("[T]hese Pennsylvania state laws [the PMWA and WPCL] are to be interpreted in the same fashion as the FLSA inasmuch as 'the state and federal acts have 'identity of purpose' and the state statute substantially parallels the federal'").

pleadings, demonstrates that Rodeheaver has pled sufficient facts at Counts I and II to sustain the allegation that Defendants failed to pay him a statutorily mandated minimum wage for 20 hours of work during his final pay period.

**B. Count I: Rodeheaver's Additional Minimum Wage Claims under the FLSA**

In addition to the 20 hours Rodeheaver cites as uncompensated for performing the "essential functions" of his position during his final pay period, Rodeheaver also raises claims under the FLSA for Defendants' alleged failure to compensate him for time spent preparing to work, waiting at work sites in anticipation of work, and traveling to, from, or between work sites. (ECF No. 22, ¶¶ 20, 63-64).

At issue is whether such "portal to portal" time is compensable under the FLSA, as amended by the Portal-to-Portal Act of 1947, 29 U.S.C. § 251 *et seq*. "Portal to portal" refers to an employee's workday from starting time to quitting time. *De Ascencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3d Cir. 2003). In pertinent part, the Portal-to-Portal Act exempts employers from liability as to certain claims:

> (a) Except as provided in subsection (b), no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, ... on account of the failure of such employer ... to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after [the date of the enactment of this Act]—
>
> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. §§ 254 (a)(1)-(2).

Whether Rodeheaver's time spent traveling to, from, and between job sites, as well as time spent at job sites in preparation or anticipation for work, is compensable depends upon whether a contract existed for such compensation and whether such activities were "integral and indispensable" to each of the principal activities for which Rodeheaver was employed to perform. *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S 27, 33 (2014). An activity is integral and indispensable to the principal activities of an employee where said activity cannot be dispensed with if the principal activities are to be performed. *Id.*

If a contract or custom between the parties to compensate travel did not exist, then Rodeheaver's claim for compensation as to travel time would likely be excepted by the FLSA. However, Rodeheaver avers that DiBenedetto promised to compensate him at his hourly rate for time he spent traveling to, from, and in between job sites. (ECF No. 22, ¶ 17). Given that work agreed to be compensable between parties (by contract) is not excepted by the FLSA, and accepting Rodeheaver's allegation as true, Rodeheaver has pled sufficient facts to pursue a claim for compensation for travel time under the FLSA.

As to Rodeheaver's time spent either preparing or anticipating work without a supervisor present (and, according to Rodeheaver, unable to commence work per Defendants' policy), Rodeheaver avers that he nevertheless spent that time performing job tasks in preparation for the workday. (*Id.* ¶ 64). Accepting that allegation as true and drawing reasonable inferences in Rodeheaver's favor (such that, for example, Plaintiff used that time to prepare materials and equipment for the day's anticipated work), Rodeheaver has pled sufficient facts under the FLSA to allow his claim for compensated work preparation time to proceed.

### C. Rodeheaver's Additional Minimum Wage Claims Under the PMWA

Under the PMWA, Rodeheaver brings claims regarding compensation for travel and work preparation time parallel to those brought under the FLSA. Travel time is compensable under the PMWA if it is "time spent in traveling as part of the duties of the employee during normal working hours and time during which an employee is employed or permitted to work." 34 Pa. Code § 231.1 (1994). *See also Smith v. Allegheny Technologies, Inc.*, 754 Fed. App'x 136, 140 (3rd Cir. 2018); *Espinoza v. Atlas Railroad Construction, LLC*, 657 Fed. App'x 101, 104 (3rd Cir. 2016) ("Unlike the provisions of the FLSA that govern compensable travel, the PMWA regulation expressly requires that the travel be part of the employee's duties to be deemed part of the 'hours worked' for which he is entitled to be paid"). In determining whether travel time is compensable under the PMWA, the Court must consider the underlying employment agreement between the parties. *Smith*, 754 Fed. App'x at 141 (citing *Pennsylvania Fed'n of Bhd. of Maint. of Way Employees by Dodd v. Nat'l R.R. Passenger Corp. (Amtrak)*, 989 F.2d 112, 115 (3rd Cir. 1993)). Therefore, the Court must consider whether Rodeheaver's duties, as agreed upon between himself and DiBenedetto, included travel during the workday and between his personal residence and job sites.

Rodeheaver claims that he was occasionally required to travel in-between job sites during the workday. (ECF No. 22, ¶ 17). At this stage of litigation, the Court must accept that as true and reasonably infers that such travel was a "duty" of Plaintiff's employment. Therefore, Rodeheaver's claim to be compensated for workday travel in-between job sites may proceed. As to Rodeheaver's claim that he was required by DiBenedetto to travel between his personal residence and job sites as a condition of employment, and that DiBenedetto promised to compensate him for that travel, the Court accepts such an agreement as true at this point in the case

and reasonably infers that such travel was a "duty" of Plaintiff's employment. Rodeheaver's claims regarding compensation for travel time under the PMWA may proceed.

As to Rodeheaver's claim to be compensated for work preparation time under the PMWA, the Court need only consider whether that time may be counted as hours worked. *In re Amazon.com, Inc.*, 255 A.3d at 209 (quoting 43 P.S. § 333.104) ("The PMWA plainly and unambiguously requires payment for 'all hours worked[.]'"). Although the PMWA does not define "hours worked," the Pennsylvania Supreme Court considers all time spent performing the following categories of activities to be "hours worked": time during which an employee is required to be on the premises of an employer, time during which an employee is required by the employer to be on duty or be at the proscribed workplace, time spent traveling as part of the duties of the employee during normal working hours, and time during which an employee is employed or permitted to work. *Id.* at 203-204.

Rodeheaver avers that, on multiple occasions, he arrived at a job site and engaged in preparatory actions while waiting for his supervisor and/or fellow employee to arrive before commencing work (as per HomePro's internal policy). (ECF No. 22, ¶ 19). The Court accepts those facts as true at this stage of litigation and draws the reasonable inference that HomePro required Rodeheaver to be on duty and at the proscribed workplace when he performed said preparatory actions. Thus, Rodeheaver's claim to be compensated for work preparation time may proceed under the PMWA.

**D. Rodeheaver's Claims Under the WPCL**

Rodeheaver's claim under the WPCL focuses on Defendants' alleged failure to pay or reimburse him for gasoline, time spent preparing and waiting to work, and time spent traveling to, from, and in between job sites. (ECF No. 22, ¶ 113). Additionally, Rodeheaver claims that he is

owed wages under the WPCL to remedy his $0 final paycheck from Defendants. (*Id.*). For each of these claims to proceed, Plaintiff must plead sufficient facts to sustain the averment that he and Defendants entered into contracts to compensate him for each of the categories mentioned above.

As to the so-called Gasoline Non-Reimbursement Practice, Rodeheaver avers that Defendants "deemed the time that Rodeheaver spent traveling to, from, and in between job sites to be so significant and substantial that Mr. DiBenedetto verbally promised to provide Rodeheaver with compensation for the expense or purchasing gasoline for his personal/work vehicle." (*Id.* ¶ 18). Furthermore, Rodeheaver's claims regarding travel time are similar to those regarding gasoline reimbursement, where Rodeheaver avers that Defendants "promised to compensate Rodeheaver at his hourly rate of $22.00 for time that Rodeheaver spent traveling to, from, and in between job sites." (*Id.* ¶ 17).

The WPCL does not establish a right to compensation. Instead, it provides a statutory remedy when an employer breaches a contractual obligation to pay earned wages. Thus, where claims under the WPCL arise, "the contract between the parties governs in determining whether specific wages [have been] earned." *Antol v. Esposto*, 100 F.3d 1111, 1117 (3rd. Cir. 1996). Under the WPCL, reimbursement of expenses is included within the definition of "wages or compensation." 43 P.S. § 260.2a.

Where Rodeheaver seeks to recover wages pursuant to averred agreements between him and Defendants regarding gasoline expenses and travel time, the Court must determine whether Rodeheaver has pled sufficient facts to make plausible the existence of a contract for reimbursement of both expense categories. To determine whether a contract has been formed, the Court looks to: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there

was consideration. *ATACS Corp. v. Trans World Communications, Inc.*, 155 F.3d 659, 665 (3rd Cir. 1998); *Johnston the Florist, Inc. v. TEDCO Constr. Corp.*, 657 A.2d 511, 516 (Pa. Super. 1995). As stated above, Rodeheaver avers that such contracts were entered into orally. (ECF No. 22, ¶¶ 17-18). Construing Rodeheaver's pleadings in the light most favorable to him, the Court finds that these allegations are sufficient to sustain the averment that he and Defendant entered into oral contracts to reimburse expenses for travel time and gasoline, respectively.

Rodeheaver's claims for compensation pursuant to work preparation and his final paycheck require a similar but different analysis under the WPCL. No dispute exists within the record as to whether Rodeheaver was a contractual employee of Defendants, and Rodeheaver avers that he performed "workplace duties" for which compensation was never received. (*Id.* ¶¶ 104, 106). Additionally, Rodeheaver's claims for compensation pertaining to his final paycheck similarly arise out of the contractual employment relationship he had with Defendants (under which Defendants had agreed to disburse employee pay on a weekly basis). (*Id.* ¶¶ 109, 112). These factual allegations are sufficient to sustain Rodeheaver's claims under the WPCL.

**E. Rodeheaver's Breach of Contract Claims**

Under Pennsylvania law, three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract (including its essential terms), (2) a breach of the contract, and (3) resultant damages. *Doe v. University of Sciences*, 961 F.3d 203, 211 (3rd Cir. 2020) (citing *Meyer, Darragh, Buckler, Bebenek, & Eck P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016)). To determine whether a contract has been formed, the Court looks to: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3)

whether there was consideration. *See ATACS Corp.,* 155 F.3d at 665; *Johnston the Florist,* 657 A.2d at 516.

Rodeheaver's breach of contract claim is grounded in his averment that Defendants failed to provide fifty-five hours of work per week as contracted. (ECF. No. 22, ¶¶ 125, 128, 131). Additionally, Rodeheaver seeks compensation on his breach of contract claim for Defendants' alleged non-reimbursement of gasoline expenses, travel time, work preparation time, and failure to compensate Rodeheaver in his final paycheck. (*Id.* ¶ 130).

Here, the Court may not determine whether Rodeheaver and Defendants formed a bona fide contract, nor whether any such contract was breached. At this stage, the Court accepts as true that Rodeheaver performed duties for Defendants under the belief that he had accepted an offer of employment for fifty-five hours of work per week with reimbursement for gasoline and travel time, all to be paid on a weekly basis. (*Id.* ¶¶ 11-12, 17-18, 126). Thus, Rodeheaver is entitled to the reasonable inference that such an offer was made by Defendants so as to make the existence of a contract plausible. *Iqbal*, 556 U.S. at 678 ("Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged."). "[T]erms of a contract are reasonably certain if they provide an appropriate basis for determining the existence of a breach and for giving an appropriate remedy[.]" *See Ecore International, Inc. v. Downey*, 343 F. Supp. 3d 459, 489 (E.D. Pa. 2018) (citing *Reed v. Pittsburgh Bd. of Pub. Educ.*, 862 A.2d 131, 135 (Pa. Commw. Ct. 2004) (adopting the Restatement (Second) of Contracts § 33 (1981))). As pled, the alleged terms of the contract between Rodeheaver and Defendant—fifty-five hours of work per week at a rate of $22.00 per hour, as well as agreements to reimburse Rodeheaver for gasoline and travel time—are "sufficiently definite." (ECF No. 22, ¶¶ 11-12, 17-18).

Additionally, the Court finds Rodeheaver's allegation that he exchanged his labor for the expectation of payment from Defendants to be factually sufficient to establish mutual consideration. (*Id.* ¶ 11). *See Ecore International, Inc.*, 343 F.Supp.3d at 491 (internal quotations omitted) ("Consideration is an act, forbearance, or return promise bargained for and given in exchange for the original promise").

Rodeheaver has pled that he was not paid for fifty-five hours of work per week due to the practices of his supervisor and that he did not receive compensation for gasoline, travel time, or work preparation (or any compensation at all in his final paycheck). Thus, given that Rodeheaver has pled sufficient facts to give rise to the existence of a contract and a breach thereof, Rodeheaver's breach of contract claims may proceed.

**F. Rodeheaver's Unjust Enrichment Claims**

To establish a claim for unjust enrichment, a party must show that it conferred a benefit to the other, that the party in receipt of that benefit appreciated it, and that acceptance or retention of that benefit would be inequitable or unjust. *Allegheny General Hosp. v. Phillip Morris, Inc.* 228 F.3d 429, 447 (3rd Cir. 2000). Rodeheaver avers that Defendants were unjustly enriched because they retained the benefit of his labor without compensating him at the rate agreed upon by the parties (or, in the alternative, at the statutory minimum wage). (ECF No. 22, ¶¶ 137-139). The Court accepts as true that Rodeheaver performed the work as alleged, and that he was not reimbursed or compensated for gasoline expenses, travel time, work preparation time or in his final paycheck. Thus, Plaintiff has pled sufficient facts to establish his claim for Unjust Enrichment.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Second Motion to Dismiss the Amended Complaint (ECF No. 23) will be denied. An Order of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

July 31, 2023
Dated